**Nedra BIGOSA, Administratrix of the Estate of Victor A. Bigosa, Deceased,**

v.

**ORION SHIPPING AND TRADING COMPANY.**

**No. 337 of 1955.**

United States District Court
E. D. Pennsylvania.
May 22, 1959.

Morris M. Shuster, Freedman, Landy & Lorry, Philadelphia, Pa., for libellant.

William C. Schultz, Jr., Krusen, Evans & Shaw, Philadelphia, Pa., for respondent.

EGAN, District Judge.

Victor Bigosa, 57 years of age, died on February 26, 1955, while a patient at the National Institute of Health, Bethesda, Maryland, of uremia, nephrosclerosis and essential hypertension.

His surviving widow, Nedra Bigosa, qualified as administratrix of his estate after her appointment as such by the Register of Wills of Philadelphia County, Pennsylvania, on December 2, 1955.

Thereafter, on December 22, 1955, she brought this suit in admiralty against the respondent as owner and operator of the steamship Oceanic on which he had served as chief steward, to recover damages for his death, on the theories of negligence and unseaworthiness. Jurisdiction is claimed under the General Admiralty Law and the provisions of the Jones Act, 46 U.S.C.A. § 688; Federal Employers' Liability Act, §§ 1, 9, 45 U.S. C.A. §§ 51, 59. Libellant cannot prevail on either theory.

Before he signed on the Oceanic as chief steward on December 9, 1953, Bigosa was given a physical examination by Dr. George Raskin on behalf of the respondent and he was cleared for sea duty. Nothing unusually abnormal was noted about his heart, his pulse and his blood pressure.[1] When the doctor questioned him about prior illnesses, injuries or operations, he replied in the negative. He certified to the latter over his own signature. Exhibits L-9 and R-1.

Aboard ship Bigosa performed the customary duties of a chief steward, including the supervision of several mess attendants. After a time he began to develop symptoms of dizziness, headaches and double vision. He was again examined by Dr. Raskin on March 5, 1954, and his blood pressure was dangerously high.[2] On the advise of Dr. Raskin, Bigosa was admitted to the U. S. Public Health Service Hospital, Baltimore, Maryland, where he was a patient from March 8 to April 30, 1954. Thereafter he was an out-patient at the same hospital from May to September 1954. He became a patient at St. Agnes' Hospital, Philadelphia, Pennsylvania, from September 28 to October 5, 1954. On the latter date he transferred and again became a patient at the Government Public Health Service Hospital at Baltimore from October 5 to October 28, 1954. From the latter date until he died on February 26, 1955, he was confined to the National Institute of Health at Beth-

esda until February 26, 1954, except for the period December 22 to December 30, 1954. As indicated above, he died on February 26, 1955, of uremia, nephrosclerosis and essential hypertension.

Bigosa first went to sea in 1935 as a cook and steward. In September 1953 he developed headaches and he decided to take a vacation. While on vacation, he visited at the home of a relative in Philadelphia where there were small children. Dr. Maceo Morris had been treating the children at their home while Bigosa was there. At that time he checked Bigosa's heart and blood pressure and found him suffering from an extremely high blood pressure[3] and an enlarged heart. His condition as diagnosed by Dr. Morris was hypertensive cardiovascular disease. A week later, on October 6, 1953, he was again checked by Dr. Morris and his blood pressure, although still high, had receded somewhat and the same diagnosis was given. The doctor prescribed medication and rest.

Libellant alleges that respondent was negligent in that it is charged with the negligence of Dr. Raskin in failing to discover Bigosa's enlarged heart and that he was suffering from hypertensive cardiovascular disease; that as a result the deceased was permitted to go to sea and perform work which aggravated his condition and eventually caused his death. This proceeds on the theory that Dr. Raskin was the agent of respondent. Libellant's counsel stated it as follows: " * * * In order to establish liability in this case the question arises whether Dr. Raskin could be considered an agent of the respondent for the purposes of imputing knowledge now."

It is uncontroverted in the record that Dr. Raskin graduated from the University of St. Louis Medical School in 1931 and that he is a qualified medical practitioner in the States of New Jersey and New York; that he maintains his home and office at Woodcliff Lake, N. J. where he is engaged in private practice.

1. 132/78.
2. 212/150.

3. 190/130.

He examines seamen for a number of shipowners including the respondent. The request for the examination usually comes to Dr. Raskin by telephone from the port captain. When the examinations are completed he sends a bill to the port captain and is paid through him. N.T. p. 39.

■ Under the facts we are constrained to find that Dr. Raskin is not an agent of the shipowner. He is an independent contractor who is paid on a per case basis. Furthermore, we impute no negligence to Dr. Raskin because we do not reach this question.

Aside from the testimony of Dr. Morris and Dr. Raskin, libellant's case rests mainly on the testimony of Dr. Gelfand, a heart specialist. Dr. Gelfand did not examine the decedent at any time. Therefore his testimony as to the decedent's alleged condition on December 9, 1953, and as to what Dr. Raskin should have found, and finally the cause of decedent's death, was based solely on hypothetical questions.

■ In evaluating the medical testimony of Dr. Raskin who actually saw the decedent on December 9, 1953, and weighing it against the testimony of Dr. Gelfand, the Court finds that the libellant has failed to sustain the burden of proof.

"An opinion is only that: it creates no fact. It is what someone thinks about something, and the thought may be precisely accurate or totally inaccurate, and yet represent the absolutely honest conviction of the person who expresses it. Because of this, opinion evidence is generally considered of a low grade, and not entitled to much weight against positive testimony of actual facts." Ray, to Use of Miller v. City of Philadelphia, 344 Pa. 439, 25 A.2d 145, 146; see also McCormick Transportation Co. v. Philadelphia Transp. Co., 161 Pa.Super. 533, 55 A.2d 771.

The above constitute our findings of fact and conclusions of law under Admiralty Rule 46½, 28 U.S.C.A.

Judgment will be entered for respondent. Counsel will submit an order.